UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCES J. ROUDEBUSH,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:17-cv-01905 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born December 23, 1945, applied on August 1, 2003 for disability insurance benefits ("DIB"), alleging disability beginning October 1, 2000. Administrative Transcript ("AT") 22, 56-58. She later amended her alleged onset date to January 1, 2001. AT 846. In her 2003 application, plaintiff alleged she was unable to work due to back and leg pain and shortness

1

of breath. AT 22. The agency denied plaintiff's application, and on June 30, 2006, the ALJ issued a hearing decision, finding that plaintiff was not disabled through the date of the decision. AT 22-26. Following a stipulated remand[1] and a second hearing before the ALJ, a second decision issued on April 2, 2010, finding plaintiff not disabled through her date last insured, March 31, 2006.[2] (AT 584-606.)

Plaintiff appealed the second decision, and a Nevada district court remanded the case for further proceedings. AT 907-908. Following a third ALJ hearing, the ALJ issued a decision on September 28, 2016 finding plaintiff not disabled through her date last insured.[3] (AT 831-841.)

---

[1] See AT 609-610 (Stipulation and Order for Remand in Case No. 08-cv-01653 DAD, dated Feb. 20, 2009).

[2] In order to establish disability for the purposes of DIB, plaintiff must be disabled on her date last insured, March 31, 2006. 20 C.F.R. § 404.131. See AT 586-587.

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

Plaintiff challenges this third decision in the instant case. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2006.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of January 1, 2001 through her date last insured of March 31, 2006.
>
> 3. Through the date last insured, the claimant had the following severe impairments: thoracic and lumbar degenerative disc disease, fibromyalgia, asthma, obstructive sleep apnea, and obesity.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work with occasional lifting of ten pounds, frequent lifting of five pounds, standing for two hours in an eight-hour workday, sitting for six hours in an eight-hour workday; occasional climbing ramps or stairs; occasional stooping, crouching, and kneeling; no climbing ladders or scaffolds; no crawling; avoid concentrated exposure to fumes, odors, dusts, gases, and workplace hazards, such as unprotected heights and dangerous machinery; and needs a stretch break with the ability to change position at the workstation one time per hour for three to five minutes.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a City Manager, DOT #188.117-114. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from [January 1, 2001], the alleged onset date, through March 31, 2006, the date last insured.

AT 833-841.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the medical opinion evidence from treating physician

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

Dr. Morgan; and (2) the ALJ erroneously found that plaintiff could perform past relevant work.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinion

Plaintiff asserts that the ALJ improperly discounted the February 26, 2007 opinion of treating physician Dr. Ross Morgan. In a letter written roughly one year after plaintiff's date last insured, Dr. Ross stated that he had "seen Ms. Roudebush very sporadically for financial reasons," but opined that she was "currently unable to work" for reasons explained in his letter.

4

AT 534. "[S]he has been to my best information unable to work due to initially a rare respiratory ailment which she ultimately recovered from and a [sic] overlapping progressive back pain syndrome associated with lumbar disk disease," Dr. Morgan wrote. "Between the two illnesses as far as my information goes she has been unable to work for years." AT 534. "Currently the patient is only able to stand for five minutes without the assistance of a cane and stooping and she has a stooping posture with slow gait which is very limiting in her functional capacity. . . . [I]t is my opinion that she is currently unable to work and the prognosis is not good for a rapid improvement given the protracted chronic nature of the limitations." AT 534.

The ALJ evaluated Dr. Morgan's opinions as follows:

> In a February 2004 report, Ross Morgan, M.D., opined that the claimant "has had some significant disability" due to her respiratory condition.[4] In a February 2007 letter, Dr. Morgan opined that the claimant was limited to restrictions that were consistent with less than a full range of sedentary work, including standing for five minutes without an assistive device. He further opined that she is unable to work. Dr. Morgan expressed similar opinions in a September 2009 letter.[5] Dr. Morgan's opinion is given little weight in this determination because it is inconsistent with the medical evidence of record, which indicates that the claimant's symptoms stabilized with treatment.

AT 839.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a

---

[4] Neither party provides record cites to Dr. Morgan's 2004 report.

[5] On September 23, 2009, Dr. Morgan wrote that plaintiff was "completely disabled primarily due to degenerative disc disease and degenerative joint disease,' citing a July 2009 MRI. AT 632. As this opinion was rendered more than three years after the period of alleged disability ended in March 2006, it has little probative value.

5

treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

First, the ultimate issue of whether plaintiff was disabled at any time between January 2001 and March 2006 is a determination reserved for the Commissioner. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."); 20 C.F.R. §§ 404.1527(d). Thus Dr. Morgan's statements that plaintiff "had some significant disability" and was "unable to work for years" were not medical opinions entitled to deference.

Second, Dr. Morgan's 2007 opinion that plaintiff was functionally impaired, first from a "respiratory ailment which she ultimately recovered from," and then from "overlapping progressive back pain syndrome," was contradicted by other medical opinions in the record. See AT 257-265 (October 2001 opinion of examining physician Dr. Gerald Levine, finding that plaintiff had fully recovered after a respiratory illness consisting of "an asthmatic syndrome complicating a viral infection"). The ALJ gave Dr. Levine's 2001 opinion "some weight because it is consistent with the medical evidence of record, which indicates that the claimant has significant back pain and breathing problems, but her symptoms stabilized with treatment." AT 839.

////

The ALJ summarized the medical evidence of plaintiff's respiratory illness as follows: "In November 2000, she sought treatment for coughing and shortness of breath after she was exposed to pulmonary irritants in a hotel conference room. December 2000 chest x-rays were normal, showed clear lung fields, and previously noted nodular densities were not visible. January 2001 oximetry testing showed 95 percent oxygen saturation with rest and 92 percent oxygen saturation with exercise." AT 837 (record citations omitted). The ALJ also noted that the record did not indicate that plaintiff had "chronic asthmatic bronchitis, or attacks in spite of prescribed treatment and requiring physician intervention" on a regular basis. AT 835. The record does not support Dr. Morgan's opinion that plaintiff had disabling breathing problems for any portion of the alleged period of disability.

Dr. Morgan's opinion is also contradicted by the opinion of State agency medical consultant Dr. Patrick Bianchi, who conducted a physical residual functional capacity assessment of plaintiff in March 2004. AT 457-464. Based on his review of the medical record, Dr. Bianchi opined that plaintiff could perform a range of sedentary work. The ALJ assigned "great weight" to the opinions of the State agency medical consultants, finding they were consistent with medical evidence showing that plaintiff's respiratory and back problems responded to treatment. AT 839.

The ALJ summarized the medical evidence concerning plaintiff's back pain and spinal problems between January 2001 and May 2006. AT 837-838. A "May 2001 MRI imaging of her spines showed annular disc bulges at L4-L5 and L5-S1 with associated mild bilateral recess narrowing; but no other significant abnormality." AT 837; see AT 343.

> Physical examination in January 2002 demonstrated pain with range of motion in her spine. She received an epidural injection for her back pain in February 2002 and May 2002. At follow-up in June 2002 and August 2002, she reported some improvement in her back pain, but she still had pain with range of motion in her spine. She was continued on her pain medication in November 2002.
>
> Her back pain was stable in February 2003 and her treating physician . . . reported that he was pleased with her progress. In May 2003, the claimant reported that she was pleased with her progress and her back pain was stable on her medication regimen. August 2003 chiropractic examination findings indicate positive straight leg raise test bilaterally as well as tenderness and reduced range of motion in her spine.

7

AT 837; see, e.g., AT 347, 348, 351, 358-361 (treatment notes from Tahoe Spine Center). The ALJ noted that plaintiff continued on her medication and injections and received chiropractic treatment and physical therapy in 2004 and 2005. Exam notes in 2004 and 2005 stated that plaintiff appeared to be in no obvious pain or distress. In December 2003, Dr. Gary Starr of the Tahoe Spine Center examined plaintiff and noted that, while "[s]he reports she can walk for only 15 to 20 minutes at a time . . . [and] can't carry anything heavier than 10 pounds," her gait and station were normal, and her "observed gait was smooth despite the use of a single-point cane, which she has with her today." AT 347-348.

Little objective evidence supports Dr. Morgan's 2007 opinion that plaintiff had debilitating back pain during the alleged period of disability. Insofar as this assessment was based on plaintiff's subjective complaints, the ALJ found plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms . . . not entirely consistent with the medical evidence" in an unchallenged finding as to credibility. AT 839. As the ALJ was not required to give weight to a conclusory opinion supported by minimal clinical findings, the undersigned finds no error as to Dr. Morgan.

### B. Past Relevant Work

Plaintiff next argues that the ALJ erred in finding that she could perform past relevant work as a county supervisor as that job was generally performed. See Sanchez v. Secretary of HHS, 812 F.2d 509, 511 (9th Cir. 1987) (plaintiff not disabled if he or she can perform past work as performed in national economy).

In her decision, the ALJ found as follows:

> [T]he claimant's past work as a County Supervisor was performed at SGA levels and is past relevant work. . . .
>
> The claimant has past relevant work as a City Manager, DOT #188.117-114, SVP 8, sedentary. The vocational expert explained that the DOT does not contain a listing for County Supervisor, County Commissioner, or similar elected public official title. The vocational expert testified that he reviewed the DOT's section on Public Administration Managers and Officials. He concluded the title of City Manager . . . was the closest representation in the DOT of the claimant's job duties as a County Supervisor. [AT 893-894.]
>
> In describing her duties as a County Supervisor/City Manager, the

8

> claimant explained that she started the job in 1993 after being elected to a four-year term and she performed the job for eight years, two terms total. She did not have support staff to assist her and she did her own keyboarding. She drove for approximately ten hours a week and she had a handicap placard for parking to reduce how far she had to walk. Typically, her two- to three-pound brief case was the heaviest item she lifted during her workday. She worked seven days a week, she did not have days off, and she did not have set office hours. Her responsibilities included attending various meetings. She typically attended three 30-minute meetings daily and she denied having anyone cover for her at meetings. [AT 856-870.] I find that this evidence refutes the assertion that the claimant was only able to perform this work with accommodations.
>
> . . .
>
> In comparing the claimant's [RFC] with the physical and mental demands of this work, I find that the claimant was able to perform her past relevant work as actually and generally performed. In making this decision, the testimony of the [VE] has been adopted in accordance with SSR 00-4P. At the hearing, [VE] was given a hypothetical question where he was asked whether an individual with the same vocational profile as claimant, in terms of age, education, and work experience, with the above [RFC], could perform the claimant's past relevant work as a City Manager, DOT #188.117-114, SVP 8, sedentary, as actually and generally performed. [AT 895.] Thus, through the date last insured, the claimant was able to perform her past relevant work as a City Manager, DOT #188.117-114, SVP 8, sedentary.

AT 840-841.

Plaintiff now argues that the ALJ should not have relied on the VE's testimony that the DOT-listed job of city manager was the closest representation of the job duties of a county supervisor.[6] The key difference, plaintiff asserts, is that "the position of city manager does not require campaigning," and "running for re-election is . . . a critical duty of an elected official." (ECF No. 15 at 11.)

Plaintiff asserts that, after serving two terms as county supervisor, "she was effectively fired by her constituents for being unable to perform her job" – i.e., the job duty of campaigning for re-election. (Id.) Plaintiff contends that the ALJ improperly found that she could return to her past work "without accounting for the more physically demanding tasks of campaigning for re-

---

[6] At the May 2016 hearing, plaintiff's attorney had no objection to the VE's testimony about a city manager's job being similar to a county supervisor's job. Rather, the attorney stated that the VE had done a "superior job covering the work. That's why I didn't ask any questions. I think you just covered everything in very good detail[.]" AT 898.

9

election." (Id. At 13.)

While plaintiff testified at length about her duties as a county supervisor, she did not list "campaigning for re-election" among them. See AT 856-870. She only mentioned campaigning in connection with her other elected position with the Plumas County Schools, stating that she was "doing the two elected positions and I decided that was too much and so I just decided that I would only concentrate on being a county supervisor." AT 855.

> Q: Too much in what way?
>
> A: Too many elected positions.
>
> Q: I mean was it –
>
> A: Well I served – as a county supervisor, I served on 33 different committees and commissions and having the schools, doing that at the same time, I don't think it did it justice. So even though I was running, I stopped campaigning and told everybody to vote for the gentleman that was running for the position as well.

AT 855. Notably, plaintiff did not testify at the May 2016 hearing that she was physically unable to campaign for her elected position with the schools, but that she was overextended and could not do the job "justice." (This differs from her testimony at the previous hearing before an ALJ in October 2009, where she stated that "the main reason" she could not work as a county supervisor was because she couldn't campaign door-to-door. AT 808.)

After questioning plaintiff at length about her duties as a county supervisor, the ALJ asked if there were "any other tasks that we haven't covered that were part of your duties as a county supervisor?" Plaintiff responded:

> The thing about being any elected official is you put into it what you want to. I mean – some people get elected to office and attend the meetings and don't look at their information until it's handed to them right there and others will spend, you know, multiple hours with their constituents, going to meetings, serving on committees, doing whatever the[y] think is required in the job or however they want to do the job.

AT 870.

Plaintiff now asserts that she "understandably struggled to explain her job 'requirements' because they do not exist. . . . At the most basic level, the 'requirement' of the job would be to do what is required to win a re-election, which is complicated, subjective, and impossible to define

10

generally." (ECF No. 19 at 3.) The court declines to adopt the view that plaintiff's job duties did not exist or were in some way indefinable. In fact, as defendant points out, plaintiff is confusing the job *application* process for an elected official with the *duties* of the position, which go into effect after the applicant/candidate has secured the job.

Plaintiff acknowledged that the California State Association of Counties described the job of county supervisor. AT 869-870. According to this organization, the Board of Supervisors, on which a county supervisor sits, performs various duties (e.g., setting the priorities of the county, conducting dealings related to joint power agreements with another agency, raising county revenue by imposing taxes), but does not list "campaigning for re-election" among them.[7]

Based on the foregoing, plaintiff has not shown that the ALJ erred in concluding that plaintiff could perform past relevant work during the alleged period of disability.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to remand (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted; and

3. Judgment is entered for the Commissioner.

Dated: June 6, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/roudebush1905.ssi.ckd

---

[7] See California State Association of Counties – County Structure & Powers, available at https://www.counties.org/general-information/county-structure-0 (last visited on June 3, 2019).